Justice Smith cannot be here today because of whatever reason. He has personal reasons for not being here today, but he will participate by listening to the oral arguments today. We're going to proceed as follows. First, the appellant will be allowed to proceed with 10 minutes of uninterrupted argument, after which we will ask questions if we have any. That will be followed by the appellee being given 10 minutes to respond, and we'll give the appellant a few minutes of rebuttal. Who's representing the appellant in this case? Please state your name. Good afternoon, your honor. Steve Greenberg, representing the appellee. He is trying to watch. I sent him the link. I don't know if there's a way to let him in, as well as my associates. I'm in. Oh, they're in? Okay. Sorry about that. Okay. All right. Very well. Do you have any questions about how we're going to proceed today? Anybody? No, your honor. No. May I just indicate, I know it says recording. There's some glitch in my Zoom. I don't know. That's some AI thing. I don't know what it is. I don't know. I'm not recording anything. If anyone thinks I'm recording, I'm not recording anything. No, I don't think so. Something my Zoom is doing, I haven't figured out how to turn that off. It is being recorded, as you know, for public record, of course. Right, but I'm not. I'm not recording if that's my Zoom. My Zoom seems to put that on. So I just wanted to, in case, maybe it's just on my screen. Are there any other concerns? Well, Justice House, I just have one question. What is read AI meeting? That's mine. That's what I'm talking about. It's making some kind of notes somewhere on my computer. I don't know where. I don't know. I think we're all getting used to AI when updating our computers, and we get all kinds of problems, improvements, of course. Okay. All right. I removed it. Thank you. Mr. Spellberg, you may proceed when you're ready to proceed. Thank you, Your Honors. Again, Assistant Special States Attorney Alan Spellberg, representing the people of the state of Illinois. I'd first like to begin with a thank you for the personal request from last week. So thank you for that. And then I'd also like to offer an apology to this court. I did not file a reply brief last fall. I had a personal setback that prevented me from completing work at that time. And by the time I overcame that, I was unable, it was too late to get back into the reply brief. So I apologize if my failures have made it more difficult for this court. But I do believe that the positions that we've taken in our opening brief and our brief are clear and strong in the sense that this is an extraordinarily unusual case. The law that is applicable to this case in action pursuant to the Illinois Torture Inquiry Relief Commission Act has dramatically changed, not only since this court ruled back in 2022, but since the trial court ruled granting the defendant's motion vacating his convictions pursuant to the Turk Act. Since that, the Illinois Supreme Court has dramatically changed the law that applies to this case. Not only has it ruled in people versus fair that a defendant in a Turk action must bear the burden of proving that he was tortured into giving a confession and that burden does not shift to the state, the court in fair specifically overruled the Wilson decision, which this court relied upon in its earlier decision in 2022. Similarly, in people versus Harris, which we cited in additional authority motion, the Illinois Supreme Court ruled that in a related post-conviction proceeding seeking to raise a claim of involuntary coerced confession, the appellate court does not have the authority to remand the matter for a new suppression hearing in the midst of the post-conviction proceedings. Instead, the appellate court must place the burden upon the petitioner to prove that his confession was coerced, and if that's the case, grant him a new trial. Importantly, in the Harris case, the Illinois Supreme Court overruled the World decision, another decision which this court relied upon very heavily in its 2022 opinion. More recently, in the Mohammed case, the Illinois Supreme Court reaffirmed fair and held that it is the defendant's burden to prove that he was tortured into giving a confession before relief can be granted under the Turk Act. And then finally, in the Angel Class decision, the Illinois Supreme Court ruled that the appellate court does not have the authority to order a matter be sent to a new judge on remand out of, quote-unquote, the interest of justice, and in doing so, they specifically overruled the Serrano decision, again, another decision which this court relied upon in its 2022 opinion. Now, I'm pointing this out not to say that the appellate court was wrong at the time that it ruled in 2022. It was following the law as it existed in the state of Illinois at that time. But since then, the Illinois Supreme Court has completely changed the legal landscape that applies to these types of cases. And the question before this court today is whether or not the trial court's decision vacating the convictions, suppressing the statements pursuant to the Turk Act is proper in light of these new cases. As we point out in our brief, under fair, it is clear that the defendant has never been expected to or even attempted to prove that he was tortured into making a confession. Instead, what he argued at the original Turk hearing back before Judge Maldonado and then in the appellate court here was that he was not obligated to prove that he was confessed because that was not the question to be resolved under the Turk Act. Instead, the only question to be resolved was whether or not the new evidence of pattern and practice which could be used to impeach the officers was significant enough that the outcome of the suppression hearing would likely be different. Fair specifically rejected that standard. They said that it cannot be the standard. Instead, the defendant must actually prove that he was tortured into confessing. And so in this case, where the record is clear that no judge has ever required the defendant, the petitioner, to make such a showing, it's clear that he cannot be granted relief under the Turk Act. And if he can't be granted relief under the Turk Act as it's construed today by the Illinois Supreme Court, then the trial court's ruling granting him that relief has to be reversed. Further, what the fair case, what the Harris case recognized is that the original decision to remand it for a new suppression hearing was effectively sending it back for an intermediate hearing, an intermediate stage. Before vacating the conviction, before suppressing it, we're going to have another hearing where the state will bear the burden of proof as it would normally have before a pretrial suppression hearing. The problem with that is, again, in fair and in Harris, the court made it very clear that once the conviction is entered, when we're in the collateral proceedings, like a post-conviction or a Turk proceeding, the defendant has to bear the burden. The state can't bear the burden. And yet, in this case, looking at the hearings, the proceedings that were before Judge Howard, it's very clear that the court granted relief simply because it found that the state had not met its burden, not that the petitioner had met his burden. That's understandable because the matter was remanded for a new suppression hearing, but we know from fair and Harris that's not the proper step in the procedures. Now, we also cite in our brief the discussion of the law of the case, and we recognize that normally, three years later, you can't ask a court to re-examine the legal conclusions that were entered previously. But there are two exceptions to the law of the case. One, which is extraordinarily rare, but does happen, is when the higher court issues a change in the law, which is controlling on the precisely same issue. That is what happened here in multiple instances. The Illinois Supreme Court has not only overruled Wilson, saying he was wrong, but then looked at the specific question that this court looked at originally and said the petitioner in a Turk action must prove that he was tortured. That's the exact opposite of what this court held in 2022 based upon Wilson. Fair also said that the burden shifting that occurs in a motion to suppress prior to trial does not apply in a collateral attack on a coerced confession, an alleged earlier decision, the basis of it was that the defendant had had established enough evidence to shift the burden to the state, which was the reason for the motion to suppress being ordered. Finally, as I said, Harris specifically says that there is no intermediate step, no fourth stage per se. It's either the defendant has proven his case and he's granted relief, or it's denied. And so under the extraordinarily unusual nature of this case, under the change in the law exception to law of the case, this court has to apply the laws that exist today. It has to apply Fair, Harris, Mohammed, and then Angel Class as well regarding the remand to a different judge, because those decisions are what is binding Illinois law today, as this court is making its decision. It's not a question of what the binding Illinois law was back in 2022. It's a question of what the law is today. And that's what this court is going to apply and must apply. On top of that, the factual findings by Judge Howard below demonstrate that she did not find that the defendant, the petitioner, was tortured into giving a confession. What she found was that the state did not prove the voluntariness of the confession. But Fair says that voluntariness and torture are two distinct questions and that you shouldn't focus in on the voluntariness as we would in an ordinary pretrial motion to suppress, as we do under the Turk statute. Instead, the defendant's burden is proof that he was actually tortured. And importantly, in Judge Howard's factual findings, she never says that the defendant is credible. She never says that the police officers are incredible. What she says is that their credibility is somewhat affected by the pattern of practice evidence. But she specifically finds former ASAs Laura Lambert and Steve Rosenblum to be credible when they specifically rejected the arguments, the defendant's claims, that they were participants in the coercion. It's not possible to accept the credibility of the former ASAs and also accept the credibility of the petitioner. And so the credibility finding by itself demonstrates the defendant hasn't proven his case. And I would add, in the earlier decision in this case, in 2022, this court followed the law, as said in Wilson and Worrell, that the petitioner's credibility was only marginally relevant. But in fair, the onus court said that was wrong. The petitioner's credibility is extraordinarily relevant and that if the trial court judge who is hearing this case finds that the petitioner is not credible in his discussion and his claims regarding what happened in terms of the interrogation, then that alone is the basis to affirm the denial of relief. Significantly, Judge Maldonado, when he first ruled on this matter, specifically found that the defendant was not credible. But he also, applying the laws that existed at the time, said that the defendant's credibility was only marginally relevant. That cannot be the case because fair tells us it's not the case. I would also point out in Howard's factual findings, she did not find that Detective O'Brien was wrong when he said that he was not present at the time of the interrogation or that Steve Rosenblum was wrong when he testified that over the 30 hours that he was there, Detective O'Brien was not there. Instead, what Judge Howard found was that the state was not able to prove that he was necessary, that Detective O'Brien was necessarily present at the time. What she said specifically was the court does not find that Detective O'Brien was necessarily present during the time of the statement, but that he may have been present. That's not a finding of fact in support of a coerced confession. What that is, is a finding that the state hasn't met its burden in a hearing on a motion to suppress. And that's the problem with this case because everything about this case revolves around the fact that the burden was placed on the state to prove the defendant's the voluntariness of the petitioner's statement and not placing it upon the petitioner to prove that he had been tortured into giving a confession. And so, for those reasons, we have asked this court, pursuant to the exceptions to the law of the case, to vacate or reverse Judge Howard's ruling and to reinstate the ruling by Judge Maldonado from the earlier decision. As we cited in our brief in the Miller case, as we cited in the motion for additional authority, the Jones case, that's the proper remedy when the controlling law exception to the law of the case applies. Because it's a recognition that the earlier decision, while it may have been correct under the laws that exist at the time, is no longer correct as it exists in the current time, and the proper remedy is to reinstate the prior decision. However, we recognize the difficulty of such a ruling, and so we would assert that, at a minimum, the matter should be remanded for a new hearing on the petitioner's Turk claim, where he bears the burden of proving that he was tortured into giving a confession, as required by the language of the Turk Act and by People v. Fair and People v. Muhammad. If the court has any questions, I'm happy to respond. I'm sorry, Justice House, you're on mute, sir. Obviously, you did not present this argument before the trial court because fair was not decided until after the trial court ruled? That is correct, yes. Okay. Now, I'm just going on procedure here. We're charged with reviewing the decision of the trial court to determine whether or not the trial court erred when it made this decision. Now, the trial court was interpreting the law as it existed at that time. Where do we go back and say, well, we're going to reverse? How do we get jurisdiction to even go back and say, you're wrong, you should have relied on the case that came up after you ruled? I mean, how does that work? How far do we go? Yes, Your Honor, and we are not asserting that this court has to jurisdiction into the previous appeal and go back and undo that. What the exceptions to the law of the case recognize is that this court must rule upon the validity of the trial court's ruling based upon the laws that exist today. This court can't affirm a ruling in the face of a directly contrary Illinois Supreme Court decision. And so it's not a question of the fact that Judge Howard was following this court's mandate, which she was. We acknowledge that, that she was correctly adhering to the court's mandate. But today, as this court is faced with the decision of whether or not her ruling to grant relief under the Turk Act is proper, this court has to apply the Turk statute as it is currently construed by the Illinois Supreme Court. So it's not a question of going back in time and undoing something. It's a question of deciding whether or not the decision today is correct. And if it's not, then what is the remedy for that? What is the rule on applying court rulings prospectively and retroactively? Your Honor, obviously the court decisions are prospective to the sense that they apply to all cases going forward. And they also apply to all cases that are currently pending on appeal, as this case was. Cases are applying- Well, it could be argued that it was over because everybody ruled according to what the law was back in the first case, and it was over in 2022. And therefore, it is over. We're going back. Respectfully, Your Honor, I would disagree with that because after Judge Howard ruled, we immediately filed our notice of appeal the next day. So this court's jurisdiction to review Judge Howard's ruling is clear and unquestioned because her ruling that was entered in September of 2023 is what's before this court. You know what I was saying is that the argument is that the torture commission proceedings were concluded with the 2022 appellate court ruling. And therefore, when it was sent back, it's like a case where there's a motion to suppress. If it's denied, then conviction, I would say it's a conviction to stand. But if it's granted, like it was in this case, the appropriate order was new trial. But the argument is that the torture commission part of it was dead. Your Honor, I have two responses to that point, and I appreciate the question. First is, I would direct this court to the motion practice that occurred here in the appellate court regarding that precise issue wherein Mr. Greenberg filed a motion to strike our brief and have the case dismissed for lack of jurisdiction. We filed a lengthy response, and it was denied without prejudice by whichever judge ruled upon it. And so there's much discussion there. But more importantly than what was previously litigated in this case is the Harris decision itself. What the Supreme Court held in Harris was that when an appellate court remands a post-conviction manner for a new suppression hearing, then it is not granting post-conviction relief. It is remanding it for further proceedings pursuant to the Post-Conviction Hearing Act, where the defendant will ultimately have to prove his case. In one of the key aspects of the Harris decision, and I implore you to read it carefully, is that the Supreme Court looked at what the ruling specifically addressed in the appellate court decision in Harris, the first appellate court decision in Harris. Like here, Harris involved a denial of relief on a coerced confession claim. The appellate court disagreed, but didn't find that he was entitled to suppression of the statements. Instead, sent it back for a new hearing, and if necessary, a new trial. After the judge in that case granted denied the motion to suppress but vacated the convictions anyway, the state appealed, and the appellate court ruled that there was no jurisdiction to even consider it, because it was already decided to vacate the convictions in the first place. The state appealed it to the Illinois Supreme Court, and the Illinois Supreme Court reversed, saying to the appellate court, no, the original ruling was not a ruling granting post-conviction relief. In fact, looking at what the defendant had argued in that case, he didn't even seek a trial. He was only seeking a motion to suppress, a new hearing on a motion to suppress. And so, therefore, it was simply a continuation of the post-conviction proceeding. That is exactly what happened in this case, but is even more significant as to what occurred. In 2022, when this court ruled and sent the matter back for a new hearing on a motion to suppress pursuant to the Turk Act, this court specifically rejected the defendant's argument that he was entitled to the statement suppressed outright, and the convictions vacated and sent back for a new trial. It addressed the issue that the defendant said he was entitled to relief under the statute at that time, and this court rejected it. It said, no, we are not going to do that, because there may still be a basis for the admissibility of these statements. And so, because of that, because the appellate court specifically rejected the argument that the defendant was entitled to the under the Turk statute, the relief which the Turk statute predominantly provides, which is a new trial, suppression and new trial, the only way to construe what occurred in this case, in light of Harris, is a continuation of the Turk proceedings. I would also add, as we pointed out in the motion practice that happened, that the parties and Judge Howard understood that they were proceeding pursuant to the Turk Act, that the Turk proceedings were not over, that they were not beginning a new pretrial phase of the case. They were addressing the question of whether or not the defendant was entitled to relief in the form of suppression pursuant to the Turk Act. That's all I have. So, just, thank you, Justice House. So, just accepting that this was a continuation on remand of the Turk proceedings, what really is remaining there, other than, so, we accept perhaps that, you know, there was a confession. Clearly, there was a confession. Clearly, the confession was used to obtain the conviction. So, what remains under fair really is whether torture occurred. Is that correct, just the three factors? Well, the third factor, which is the most important factor, is the petitioner proving that he was tortured into giving that confession. And as I stated, the petitioner has never been, that burden has never been placed upon the petitioner. From the outset of the Turk proceedings, admittedly before fair came down, but from the outset, the burden of proving that he was tortured has never been placed on him. Instead, he only had to establish that there was new evidence, effectively pattern and practice evidence, which could be used to impeach the police officers, which would potentially change the outcome of the suppression hearing. That was what the case law said at the time. That was what this court ruled in 2022. That was what Judge Maldonado was following when he denied the Turk relief in the first place. But fair says that's not correct. You can't grant the relief under the Turk Act unless the defendant actually proves that he was tortured. And so, when Judge Maldonado denied the Turk, said that standard doesn't apply, but I also don't think the defendant has met this lower standard under Worrell. And that shows the defendant couldn't, at that point, establish that he was tortured and met the standard under fair. This court agreed with Judge Maldonado and said the petitioner did not have to make that showing. And so, but then said that he did meet the lesser standard under Worrell. And it was remanded back. And then, at the proceeding before Judge Howard, and I should add, when it remanded it back, said it met the lesser standard under Worrell, this court specifically said, we don't know if the sentence, if the statements are involuntary or not. We don't know. And so, that's why we're remanding it back for a new suppression hearing, where the state will have to prove the voluntariness of the statements. And that's what happened before Judge Howard, is that the state bore the burden of proof, the burden of persuasion on the suppression hearing to establish the voluntariness of statements, even though those statements had been accepted as voluntary by Judge Sprayhorn back in 1994. Even though those statements had already been deemed voluntary, and so, as Harris says, it would be subject to res judicata unless the defendant can establish new evidence, the would have to prove that the statements are involuntary. But by placing the burden on the state that they are voluntary, effectively, the state is proving the negative. The state is proving everything the defendant says at this point didn't happen, and you should believe us, 30-some years later. And recognizing that it's a much more difficult step, and recognizing that the conviction has already been entered and is presumptively correct, the Supreme Court has said the burden must belong to the petitioner to prove the constitutional violation if it's a post-conviction, or the statutory violation if it's a Turk proceeding. To get to the short answer to your question, Justice Cobbs, what hasn't happened in this case at any point in the proceedings is the defendant has never been expected to prove that he was tortured. There was a lot of other proceedings happening, but ultimately, the burden was placed upon the state to prove voluntariness, which Fehr tells us is wrong. Thank you. I have nothing else, Justice House. One clarification. Are you basically saying that the error here is that the trial court applied the wrong burden in light of the new cases? Yes. And I would just clarify, we're not saying that Judge Howard erred, because Judge Howard was applying the law as it existed at the time of the proceeding. But the law has changed. The law has changed since she ruled. And this court, and I know your Honor's understanding, this court has to apply the law as it exists today. It can't choose to go backward in time and say, we have to apply the law as it existed before, because that's not what is expected of our judicial system. You know, laws change, cases change, the Supreme Court clarifies matters. And what this court is faced with today is whether or not Judge Howard's ruling can be affirmed or must be reversed in light of the Illinois Supreme Court decisions. Not necessarily, we're not saying she erred in that regard. We are arguing in our brief that her ruling on suppression, if this were an ordinary suppression hearing, was against the manifest weight of the evidence. And I'll rely on my brief, I'll stand on a brief for that purpose, because I do think that the procedural posture of this case is so significant. And the case law is so divergent from what it was before. And the clarity of what the ruling is, is that at a minimum, as I said, the matter really should be remanded for a new hearing where the petitioner has to prove his case that he had been tortured into, where he would have to, as fair, this isn't fair, he would have to credibly testify to what he claims to be torture. There's a lot of evidence at this hearing. You know, even if the judge used the wrong standard, if we look at that, is it permissible for us to conclude that he proved his case that he was tortured? I don't think so, Your Honor. I do not believe the appellate courts can decide that a litigant who did not bear the burden below, and was never expected to, and did not in any way- I mean, that's just the telescope you're looking at. The evidence is there. I understand. I don't think there's any case law that would authorize switching the burden on the appellate courts at the appellate level, and then granting the litigants who never bore the burden before the relief he requested by saying, well, he ultimately established the burden. As this court knows, this is not a court of fact. This is not a prior effect. The prior effect is the Circuit Court of Cook County in this case. The Circuit Court of Cook County has never had that opportunity to reach that conclusion. It's never expected the petitioner to make such a showing, and so for this court to do it as a matter of its original jurisdiction, for lack of a better term, would really be an extraordinary ruling. But below, before Judge Howard, didn't the defendant testify? He did testify, Your Honor, but as I pointed out, one, Judge Howard did not find him to be credible. At least, did not expressly find him to be credible. Instead, she found the former assistant state's attorneys to be credible, and they directly- But in finding the former assistant state's attorneys to be credible, you're saying that therefore she must have also then found that the defendant was not credible. Well, Your Honor, the logic that I'm offering there is because they directly contradicted what petitioner testified to, and if you're accepting what they're saying happened, and when they say what defendant said did not happen as credible, then necessarily it would mean the defendant was not credible. But more importantly, Judge Howard didn't believe she had to find the defendant credible to grant the relief. She did not have to make that kind of assessment because the assessment that only really mattered was whether or not the state had proved the petitioner's statements at the time. So she was never tasked with the question that the fair says she had to resolve, which is, has the petitioner credibly established that he was tortured into making a confession? And that's the flaw in the ointment here, for lack of a better term, because it's a difficult case that's been going on for a very long time. There's significant issues associated with the facts of this case. We recognize that. And yet, the petitioner should still be held to his burden in order to ensure that we have a fair and open process. And that's what we're asserting here, because had Judge Maldonado, I think we can infer from the record and from Judge Maldonado's ruling, had the ruling, had the fair decision existed at the time of Judge Maldonado's ruling, where he found the petitioner was not credible, where he found that the pattern of practice evidence didn't undermine the outcome of the proceeding, he would have denied the Turk relief. And this court would have had to examine it pursuant to the fair by saying, is that decision against the manifest way of the evidence, is that decision to deny it, where the trial court sitting as prior effect has found that defendant did not prove torture, is that, and should it be affirmed? That wasn't the question that was presented to this court three years ago, because that's not what the law was. But that is what the law is today. I have a, thank you. Then for the reasons stated in our brief, the people of the state of Illinois respectfully requested this court vacate the lower court order, vacating the petitioner's convictions, and either reinstate Judge Maldonado's earlier ruling denying Turk relief, or in a minimum remand for a new hearing on the Turk claims. Thank you, your honors. Thank you, Mr. Spielberg. Mr. Greenberg, you may proceed when you're ready. Thank you. Well, I would agree that it's a very unusual and complicated appeal. Unnecessarily so. The first thing is, I don't believe that we can revisit Judge Maldonado's decision at all, because when Judge Maldonado was hearing the case, the law was different. What had to be proven was different. What had to occur at that hearing was different. What Mr. Smith's lawyers were trying to establish that hearing was different. And the evidence they presented was what they thought they had to prove at that hearing. So I don't think you can revisit that. And I think that Mr. Spielberg concedes that we can't go back to what Judge Maldonado ruled. Secondly, when this court just asked, can we look at the evidence and independently make a decision on whether or not this third element, as you just said, Justice Cobbs, this third element has been proven, I think the court can. And I think the appellate essentially did that in People v. Anderson, which is 20-24, ILL-APT, verse 200-462-B, which was decided after the fair decision, where the same exact arguments were made by the Special Prosecutor's Office. That case had been decided for Mr. Anderson. Mr. Anderson had lost in the trial court. It had gone up on appeal. A different panel of the First District had decided for Mr. Anderson. Supreme Court and Light Affairs said, vacate your ruling, reconsider. The Special Prosecutor's Office made the same arguments they're making here, essentially, large part. And the appellate court said, no, we think that Mr. Anderson's case, he proved his case, he proved everything he needed to prove, he proved torture. Because if you look at this, what has been proven is the court recognized when you ruled in 2022. Mr. Smith's allegations have been, I think the phrase that was used by the court, remarkably consistent. He made these allegations before they were well known. In fact, he was one of the very first ever to make these allegations. The flaw that the court found largely in Judge Maldonado's ruling was that he discounted the pattern of practice evidence. Evidence which court after court after court has found exists. Evidence which Judge Howard said she was finding they were collaterally estopped from even contesting. The courts have relied on evidence from Claiborne Smith's case time and time again. In Anderson, they relied on it. In a recent case named Gardner, they relied on it. So the evidence that this court cited before has been taken by other courts as establishing torture. The evidence that Claiborne Smith has testified to himself, when they talk about it not being credible, other courts have relied on that evidence. His own testimony is cited by this court in its earlier opinion to support their own decisions. So to say that it's not credible, other courts have relied on that testimony. Of course, it's credible. Court after court has relied upon it. When you look at what occurred in the court looked at the prior case, and this court granted relief under the Turk Act. That's the way I read this court's decision. Mr. Spellberg talks about the Harris case, and I know we talked about it a little bit in our appeal because in the Harris case, the court did say that they were sending it back for suppression hearing and a new trial and use language very similar to what this court used. But that was a PC case. That was different. The Turk proceeding is remedial in nature. PC is not remedial in nature. Turk remedies are supposed to be wide ranging. They're much vast, much more vast, but for lack of a better term than the PC hearing. The relief that can be granted under Turk proceeding is far different than what can be granted when a court sends back a second stage PC hearing. What the Supreme Court said in Harris is that the appellate court overstepped what they can do when they send back a case after a second stage PC hearing. This court didn't overstep what it could do when it sent this case back in 2022. This court did exactly what it could do in 2022. It granted relief under the Turk statute and said, we're granting a new trial and as part of that, we're ordering a new suppression hearing. That's what occurred. There was a new suppression hearing. That's what took place. Whether the burden was on the state or the burden was on Mr. Smith is not important. The suppression hearing took place. The court heard the evidence and what had to be established at that suppression hearing. His statement was involuntary. And how did the court make the determination that his statement was involuntary? Because he was tortured. That's why the case was sent back. Because he was tortured into giving a statement. He didn't say he was tricked, that someone made him promises. He didn't say that that, you know, he was held there for too many hours. He said that he was subject to physical abuse. He said that he was subject to mental abuse. He said that they threatened his girlfriend, that they said that if you don't give this statement, that she's going to be charged with a crime, that her baby, she was pregnant, that her baby is going to be born and taken from her because she is going to be in jail. And that is part of the pattern and practice evidence that we introduced. And all of that fits within the definition under the Turk Act. All of those acts fit within the definition under the Turk Act of what constitutes torture. All of that. And then Ms. Tate testified. And she testified to these things happening. And she testified that she saw Clayborne. She testified that she saw him when he was walking around and that he looked like he had been abused and that his hair was in disarray. And he looked like he had been struck. And she got to observe him. So there was confirmation of that behavior. And there was other testimony that was presented. There was testimony from originally when his case had been heard. We couldn't find these people. And I think one of them was dead by the time we did this hearing. And one of them was living in St. Louis. And we couldn't get him to come in. But one of them had actually sued and won $100,000 because one of the witnesses against Mr. Smith had been beaten back at the time when he originally gave his statement, sued and won $100,000 in his case. And that's in this record. So there was physical abuse back then. And there was a witness who testified in his original suppression hearing that he heard Smith getting abused. That was in the record. Now, no one gave that any credence back then because there wasn't the pattern and practice evidence. But now with the pattern and practice evidence that we've got, we know that he was telling the truth. We know that these things went on and these things took place. So when you look at all of that, we know that whether you consider it a motion to suppress or you consider it under the three prongs and Justice Cobb correctly got it, there was only the one prong we're talking about here. The case was proven. No matter who had the burden, no matter how you slice it, no matter what occurred, this court correctly saw it in 2022 that he had proven his case that the facts were there. You sent it back because there was one issue. That one issue, Judge Howard heard the evidence and she decided against the state. We cross-examined Detective O'Brien. He said that he hadn't been there before. We cross-examined him about his time card. And when we cross-examined him about his time card, Judge Howard said, I don't believe you. So she decided that adversely to the state. That's what she decided. She made a credibility determination. That was the issue. And now everything's been decided. Then you get to the other issues and the other issues are, is there even jurisdiction for this appeal? And we've addressed that in our brief. We don't believe that if this isn't a motion to suppress, there's even jurisdiction. Then what is it? How does the state even get here? If it's not a motion to suppress, where are we at? How did the state get here to appeal? And we've raised that. Then what were we doing if it wasn't a motion to suppress? If it was remanded for some other proceeding years ago, then what are we doing here? And how did they get here? They can't appeal under Rule 604. So what is it? And what were we doing for the last couple of years in court? What did this court remand for? This court didn't remand for a new Turk hearing. This court remanded for a motion to suppress. This court granted relief under the Turk Act and sent it back for a motion to suppress. That's what happened. And if you look, we've cited in our brief, all of the different types. In fact, when we tried to argue at one point that it was something different, the state said, no. When we tried to get, excuse me, there's a siren. They're not coming to arrest me. It's a fire truck, an ambulance. When we said different things about having a, originally it was a bail hearing, then it became, I think, a detention hearing while the case was pending. The state always argued that it was a pretrial matter, a pretrial matter. And that was how we had to argue it. That was what they kept arguing. They kept treating it as that. Now they want to go back and turn back the clock because they lost the motion to suppress and a case came down that's favorable to them. So now they want to say, hey, wait a second. We did a motion to suppress for a couple of years. We kept saying, motion to suppress, motion to suppress, motion to suppress. Every time we kept saying it's a motion to suppress. But now there's this case that helps us out. So let's forget about the motion to suppress. Let's turn back the hands of time and let's go back and do a do-over where maybe we'll get a third bite at the apple on this case and we can start all over. That's essentially what they're saying here. And they shouldn't get that. I mean, ultimately at the end of the day, I wasn't there when the court issued its ruling in 2022. I was there when the court deliberated and circulated the draft and what that language meant. The court knows better than I do and better than Mr. Stalberg does. The way I read it was the court granted relief under the Turk Act, sent it back for a motion to suppress. The way Judge Howard read it, the court granted relief and sent it back on a motion to suppress. And I actually, if you look at the record on page 2189, there's a reference to it being a Turk hearing and Ms. Jennings, who was representing the state, very emphatically says, this is a motion to suppress. It's not a Turk hearing. Stop referring to it as that. That's what she says. And there's numerous other times where she says something like that. That's on page 2189. So the state referred to it that that's what we thought we were doing. That's what the judge thought we were doing. That's what the state thought we were doing. So we're here on a 604 appeal to consider a motion to suppress, which brings us to issue two. And issue two is whether or not the court abused its discretion in granting the motion to suppress. And there we're talking about factual findings, which the state doesn't challenge at all. They devote, I think, two and a half pages and don't refer to the record and don't challenge the factual findings. And they don't challenge the factual findings because the factual findings were correct. We have set out in our brief, your honors, and I'm not going to restate it for you. But in detail, in why we why torture was established. If you want to consider the case under fair, we've set forth where it was established in the hearing. We've set forth why the motion to suppress should have been granted. We've set forth in detail why we don't believe that court has jurisdiction, if it's anything other than a 604 appeal. Otherwise, I'm happy to answer questions. You're still muted. You're muted again. I can't help myself. Mr. Spielberg has said, well, yeah, the trial court made his decision. I'm talking in this remand, made his decision. But when it made his decision, the standard that it used was a standard that existed at the time. But subsequently, the Supreme Court has ruled that the state does not have a burden, but it still remains defendant's burden on this motion to suppress. What cases do you have to say otherwise? Well, I don't think he's saying it on the motion to suppress. I think he's saying that it wasn't a motion to suppress. If it's a motion to suppress, I think we're in agreement that it was the state's burden. If it was a motion to suppress racial voluntariness. If the appellate court sent it back for a Turk hearing, then Mr. Spielberg is saying that it was the defendant's burden to show that he was tortured, and therefore it shouldn't have been a motion to suppress. So what he's saying is that, I believe, if I understand the argument, and actually Mr. Spielberg and I spoke yesterday about this, I think what Mr. Spielberg is saying is that when the court sent it back in 2022 for a motion to suppress, that was fine. But now that the case law has changed, it should be for a Turk hearing. What I'm saying is that the court granted Turk relief in 2022 and sent it back for a motion to suppress. So I think a lot of it depends on what the court really did in 2022, what the relief was in 2022. The state has certainly taken the position up until the Farrer decision that the appellate court granted Turk relief in 2022. That was the position they took in the trial court. That's the way I read the state's position in the trial court, and that they're now taking a different position in the appellate court. But even if you take that position, I believe that this court can look at the record and that, just as the court can do in any other case, this court can look at the record and decide whether or not it believes torture was proven. Well, you're saying that we can just look at the record and just treat it as de novo and make our determination with respect to torture as opposed to remanding it for what Mr. Spellberg is, I think, alluding to as another Turk hearing or continuation of a Turk hearing. Yes, I think you can. I think there's enough here for you to do that, yes. Is there any support that you can, or a case that you can cite to, and I know that we're talking about shifting sands here, seemingly, from 2022 now to 2025, but is there any case that you can cite to that would give the appellate court the authority to do that? I think Anderson did that. I think they did that in Anderson. Anderson, they did say that the trial court said they had to decide if the petitioner proved his confession was the result of torture. But here, I think that the court can look at the facts that Mr. Smith brought forth and the findings that the trial court made and then decide if those fit the definition of torture. So, in other words, I don't think it hinges on whether or not the trial court used the magic word torture. I think you can look at the definition yourself. So, you're just advocating for de novo review as opposed to a remand? I think the court can do that. I'm advocating for no review because I believe that in 2022, the court already decided the Turk matter, granted relief under the Turk statute, and sent the case back for a suppression hearing. But if you don't believe that's what you did, then, yes, I'm advocating for de novo review. Well, I don't think it's fair to ask us to remember what we did. We do a lot. I was not on the panel. There you go. He's got a good excuse. I'm the authoring justice. But as I recall it, there was, in fact, some evidence that Judge Maldonado had not considered in reaching his conclusion. And that is the pattern and practice evidence that was presented by the petitioner, and we therefore sent it back. Correct. For a... Okay. Correct. The court talked about it could grant suppression, but it was not going to grant suppression. That is correct. But the question is whether it was for a Turk hearing or a suppression hearing. In other words, for whether it was a proceeding under the Turk Act or whether you had said that the remedy under the Turk Act was we were going to grant a suppression hearing. Were the Turk proceedings concluded or not? If the Turk proceedings were concluded, then what Judge Howard conducted was a suppression hearing. It was proper, and we're only on issue two here. But didn't we decide in the 2022 disposition that the error in Judge Maldonado's ruling was, in fact, his failure to consider certain evidence as opposed to just concluding that the proceedings had been complete in their entirety? I thought, and I'll go back and look at what I wrote as the authoring justice, but I thought that we were concerned in that decision that in Judge Maldonado's case that he had, in fact, failed to consider a certain pattern and practice evidence that the petitioner or the defendant wanted to present with respect to the three officers. And we thought, or we believe, that therefore we needed to send the case back. And on, I believe, the state's recommendation to remand it to a different judge. I believe that was the state's recommendation. I don't know whose recommendation that was, but you also commented on the defendant's evidence of torture that he had presented in that opinion also. So I don't want to construe what you meant. I think it's better if you construe what you meant. I obviously have my feelings on what you meant, or my preference of what you meant. So, any other questions? You need a red light. Yeah, I do. Thank you. If there are no other questions, Mr. Spellberg, you can take a few minutes to rebuttal. Thank you, Your Honor. A couple of brief points. First, just in response to a comment by Justice Cobbs regarding the remand to a different judge. It's my understanding from reviewing the briefs that there was no, in the earlier appeal, there was no request by either party for remand to a new judge, that that was done sui spante by the court. But that's not a significant point. First, I'd like to talk about what this court ruled and why it's significant. What this court ruled in its earlier decision, and in paragraph 110 specifically, was, we believe defendant has produced sufficient impeachment evidence of torture. We find defendant is entitled to a new suppression hearing. So, as you said, Justice Cobbs, it was because of his belief that there wasn't sufficient consideration by Judge Maldonado of the pattern and practice evidence. That holding is significant in light of Harris, because in Harris, the Illinois Supreme Court held that, in paragraph 52, it is not enough to merely show that the new evidence would have impeached the credibility of the interrogating detectives. Rather, as ultimately, as explained, the ultimate question of a coerced confession claim is whether it was involuntary under the totality of the circumstances. So, the reason why I'm highlighting that is, again, the decision that was made by this court in 2022 was based upon the laws that existed at the time. But the Illinois Supreme Court has said that the focus on the impeachment evidence, as opposed to the proof of the claim of torture, it was wrong. And we have to get away from that. And the reason that this court in 2022 did not find that the defendant was tortured is because it remanded it for a new suppression hearing. Because it said, again, I'm going to go back to the decision, what the court said was, in paragraph 110, we do not agree with the defendant, there is no scenario in which the state can prove the confession was voluntary. If this court had found the defendant had been tortured, that he had established torture, then there would be no scenario in which the state can prove the confession was voluntary. A finding of torture necessarily means the confession is coerced. It is not involuntary. And yet by remanding it back for further proceedings, that demonstrates that this court did not make the requisite findings under the Turk Act that the defendant was tortured. Instead, it believed that the burden had shifted to the state to prove the voluntariness of the statement. And that's, again, where Fair says that's not correct. Now, Mr. Greenberg referred to the Anderson decision as being an example of the appellate court reaching its own factual conclusions. And he's wrong. Because in Anderson, that was also a Turk case, in Anderson, the Turk hearing was held before Judge Hooks. And Judge Hooks said, under the law, under People v. Christian, the defendant has to prove that he was tortured. He then, at the end of the hearing, said the defendant has not met his burden of proving that he was tortured. I've considered the pattern in practice evidence, but the defendant himself is not credible, and I do not believe the outcome of the case. It went up on appeal, and the appellate court first ruled Judge Hooks was wrong. He should not have imposed the burden upon the state to prove that he was tortured. Instead, he merely should have followed the Wilson and Wuerl line of cases and looked to see whether or not the pattern in practice evidence was sufficient to impeach the police officers. And because we believe that he did, because we believe that the appellate court ruling in Anderson believed that it was sufficient to impeach it, they reversed it. We sought leave to appeal to the Ohlone Supreme Court, and the Ohlone Supreme Court remanded the matter back in light of fair, to reconsider in light of fair. And again, the appellate court panel in Anderson said, okay, yes, we were wrong before when we said that Judge Hooks applied the wrong standard. He did apply the right standard. He did properly, under fair, before fair came down, but pursuant to fair, he did properly impose the burden of proof upon the defendant. But we believe in light of all the evidence, his decision was against the manifest weight of the evidence. And so therefore, because the defendant met his burden that he was supposed to do it, and because the defendant knew it was his burden, and he established his point, and even though Judge Hooks ruled otherwise as a prior effect, we believe it was against the manifest weight of the evidence, and they reversed it. That decision is, again, pending leave to appeal. But the important distinction there is that the appellate court in Anderson recognized that the burden was properly placed upon the defendant. They ruled that he had his burden. In this case, there is no question that the burden was never placed upon the petitioner. Instead, the burden was always placed on the state to prove the statement. And so, unlike Anderson, where the appellate court was exercising its review authority to consider claims and whether or not the facts as proven were against the manifest weight of the evidence, what petitioner is asking for here, what Mr. Green was asking for, is an original finding of fact by the court that, by this court, that the trial court was never tasked with, was never thought it had to do, and never imposed the burden upon the petitioner to establish. And that, I don't know of a single case that has ever done that. And that would be extraordinary to allow the appellate court to say that the petitioner, that a litigant met his burden below, even though no one ever placed that burden upon him in the lower court proceedings. That's so extraordinary about the position that Mr. Greenberg is taking. Yes, it's true that the Turk Act provides for vast remedies, but what Fair says is those remedies are only available upon a showing of torture, upon a demonstration of torture. And that just hasn't happened in this case. And then finally, since Mr. Greenberg pointed to an instance where the state press, which we were treating him as such because that's what this court's order was, I would direct this court again to the motion practice that happened early in this case where Mr. Greenberg tried to strike a part of our brief, where we cite numerous instances of Mr. Greenberg specifically saying things like, Judge, if the state would like, we would not oppose a ruling that the conviction has been vacated and we can go back to a traditional motion to suppress. That they were always treating this as a Turk proceeding. It was always understood by the parties below. The procedure was complicated and confused, admittedly. And that's why the Harris case straightening out the procedure is so significant. Ultimately, the only ruling that was, the only final order that was entered in this case was the vacater of petitioner's convictions by Judge Howard. That is what we appealed in a timely fashion. This court has jurisdiction. Harris establishes this court's jurisdiction without any question. So then once this court has jurisdiction, it has to ask the question, is the grant of Turk relief proper under the current state of the law? And for those reasons, we would ask this court to vacate, reverse the lower court decision and reinstate the earlier Turk hearing where the burden would fall upon the petitioner. Thank you. Thank you, Justice Holmes. May I just say one thing, one sentence? Yes, go ahead. If you look at your prior decision in paragraph 106, it talks about, it starts having determined that the circuit court erred in denying defendant relief. We now turn to what remedy is appropriate. So I just point that out. I guess it's more than one sentence. I just point that out to, there wouldn't be a remedy unless there was a remedy. He had wrongly denied relief under the Turk Act. That was our reading. May I just respond very briefly to that? Yes. Thank you. I would just say again, as in house, this is an example of where the appellate court was following some case law that has since been overruled by the owner's report that we know, and that we have to construe it the way it is today, which is that no Turk relief had been, no ultimate Turk relief had been awarded to the petitioner. All right. Thank you. This case was very well argued, very well briefed. It's a complicated question. We like puzzles to a certain extent, but we'll take it under advised and a decision will be issued in due course. Thank you very much. Thank you.